Gail C. Potter and Loreen Potter v. Commissioner.
Potter v. Comm'r
Docket No. 4310-67. United States Tax Court
T.C. Memo 1969-227; 1969 Tax Ct. Memo LEXIS 69; 28 T.C.M. (CCH) 1190; T.C.M. (RIA) 69227; October 27, 1969. Filed Horace N. Freedman, Suite 627, 9171 Wilshire Blvd., Beverly Hills, Calif., for the petitioners. James A. Thomas, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1964 and 1965. The amounts of the deficiencies were $12,763.92 and $11,864.45, respectively. The only issue remaining for decision relates to petitioners' computation of depreciation deductions on certain leasehold improvements. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the 1191 exhibits attached thereto, is incorporated herein by this reference. Gail C. Potter ("Potter" or "petitioner") *70 and Loreen Potter are husband and wife. They resided in Encino, California, at the time their petition herein was filed. For the calendar years 1964 and 1965 they filed joint income tax returns on the cash method with the district director of internal revenue, Los Angeles, California. In April 1961 Gail [1] purchased a two-story office building for a total purchase price of $250,000. For purposes of computing depreciation, petitioners allocated $150,000 of the purchase price to the building and the balance to the underlying land. On their tax returns for 1961 and subsequent years, petitioners claimed depreciation on the building under the straight-line method, using a useful life of 20 years. On April 26, 1963, Gail entered into a lease with Pacific Telephone and Telegraph Company ("Pacific") for the entire ground floor of the building. The ground floor consisted of approximately 14,250 square feet of floor space. The lease provided for an initial term of three years at *71 a monthly rental of $4,700 with Pacific having an option to renew the lease for an additional two-year term at $3,750 per month. As a condition to its leasing the ground floor, Pacific insisted that Gail make certain improvements. Pacific did agree to increase the amount of rent which petitioner had been seeking, by such an additional amount that Gail could recoup the cost of the improvements over the initial three-year term of the lease. Gail financed the cost of the improvements with a loan from a local bank to which he assigned as collateral his lease with Pacific. Petitioner retained a general contractor to make the improvements, additions, alterations, and rearrangements required by the lease with Pacific. This contractor has been active in the contracting business since 1933 The total cost of these improvements was $87,130.84. The remodeling included: removal of the existing partitions, doors, and mezzanine; leveling of the floors; installation of a suspended acoustic ceiling; installation of fluorescent lighting fixtures; the installation of ceiling-high dry-wall partitions and vinyl asbestos floor tile; installation of an air-conditioning system which would provide both *72 heated and refrigerated air; installation of Fiberglas draperies at all windows; and painting of the entire area. The first step of the remodeling involved certain demolition work. The contractor demolished the mezzanine floor, removed stairs to the basement, and closed the window spaces except those needed for air-conditioning access. Individual toilet rooms were also moved. He further leveled the ground floor. It had been on different levels having a variance of 24 inches between the high and low points. The cost of the demolition work was about $1,900. By letter dated March 7, 1966, Pacific exercised its option to renew the lease for a two-year term extending from August 1, 1966, to July 31, 1968. On their Federal income tax returns for 1964 and 1965, petitioners computed depreciation on the improvements described above, using the straight-line method and a useful life of three years, the initial term of the lease. Respondent claims that some improvements have a useful life of 19 10/12 years and others a 9-year useful life. If the useful life is deemed shorter than the number of years claimed by respondent, we must determine whether the improvements have a salvage value. *73 Opinion Petitioner owned a two-story office building. He entered into a lease with Pacific whereby Pacific leased the entire ground floor for a period of three years. Pacific had an option to renew the lease for an additional two-year term. Under the terms of the lease, petitioner was obligated to install certain leasehold improvements in accordance with plans and specifications prepared and submitted by Pacific's Office of Chief Engineer. The matter before the Court concerns petitioners' depreciation deductions relating to these improvements. On his returns petitioner wrote off such improvements over the primary three-year term of the lease. In his opening statement, however, he expressed willingness to accept a useful life of five years, which includes, in addition to the primary term of three years, a two-year option period. On the other hand, respondent contends that the useful life should not be limited by the term of the lease. If we so agree, the parties have stipulated the varying useful lives of the improvements, ranging from 9 to 19 10/12 1192 years. If we hold that the useful life is limited to a period of five years or less, respondent urges that petitioners have *74 not established what would be the salvage value for the items in question. Section 167(a), [2] Internal Revenue Code of 1954, provides for an allowance for the exhaustion, wear, and tear, including a reasonable allowance for obsolescence, of property used in a trade or business. There are three pertinent provisions in the regulations. Section 1.167(a)-1(b) defines the term "useful life." It states that the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer. Section 1.167(a)-4 discusses depreciation of leased property. The last sentence provides: Capital expenditures made by a lessor for the erection of buildings or other improvements shall, if subject to depreciation allowances, be recovered by him over the estimated *75 life of the improvements without regard to the period of the lease. The foregoing provision must be considered together with language appearing in section 1.167(a)-9, Income Tax Regs., dealing with obsolescence. It is stated therein that the depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Hastings v. United States, an unreported case ( N. D. Cal. 1967, 20 A.F.T.R. 2d 5633). The record in this case from the standpoint of both parties is anything but satisfactory. Only one witness other than petitioner himself testified and that was the contractor petitioner hired to make the improvements as required by the lease. Respondent's cross-examination was far from being exhaustive, not to mention the fact that material appearing in his reply brief was more properly a matter for his original brief. In order to prevail, petitioner had to establish conjunctively to our satisfaction three necessary element. The first element is that he could not anticipate as of the date his returns for the years in question *76 were filed that Pacific would enter into another lease at the end of the five-year period. Second, it must be established that if Pacific were to vacate the building petitioner could not find another large-scale employer willing to lease all 14,250 square feet on the ground floor and that it is not possible to rent the ground floor again without dividing it into smaller units for use as individual stores. The third element is that upon conversion of the ground floor to spaces for use by small stores the leasehold improvements of necessity would be removed completely and have no salvage value. Without considering the first and third elements, we think that petitioner has fallen short of meeting his burden of proof on the second issue. The only testimony on this question was from Gail himself. Such testimony standing alone is not sufficient and should have been buttressed by the testimony of others who were familiar with the neighborhood encompassing the office building. We are not convinced from the little testimony we heard that petitioner would have been unsuccessful in finding another large tenant and that his only alternative was to repartition the ground floor into smaller units. *77 Decision will be entered under Rule 50. Footnotes
1. The record is unclear whether title to the property was held by Gail alone or together with his wife. This uncertainty is not material to the case since they filed joint returns for the years in dispute.↩
2. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, (2) of property held for the production of income.↩